FILED

2022 JUN 30 P 1:42

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| KYLIE AMISON, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>GEORGE MASON UNIVERSITY, THE RECTORS AND VISITORS OF GEORGE MASON UNIVERSITY, JOHN DOES 1-25<br><br>*Defendants.* | Case No:<br><br>**COMPLAINT**<br><br>**PROPOSED CLASS ACTION**<br><br>**JURY DEMAND** |

## CLASS ACTION COMPLAINT

NOW COMES Plaintiff KYLIE AMISON ("Plaintiff"), appearing *Pro Se*, with her Complaint, Proposed Class Action and Demand for Jury Trial against Defendants, George Mason University ("The University"), hereby states the following:

### INTRODUCTION

1. This class action arises from the practices and methods of George Mason University under 42 U.S.C. of the U.S. Constitution whereby Defendant accused several students, Plaintiff and the Class herein, enrolled in computer science

1

courses at George Mason University of academic misconduct and denied them a fair hearing.

2. The Class is defined as:

> Individuals who were students at George Mason University enrolled in CS112: Introduction to Computer Programming.

3. Defendants deprived Plaintiff, and the Class, of their due process rights by not providing relevant information in advance of the hearing, providing highly prejudicial expert testimony, and precluding Plaintiffs from meaningful cross-examination.

4. Defendants performed a tainted investigation using faulty MOSS software that led to false findings of academic misconduct.

## PARTIES

5. Plaintiff Kylie Amison ("Amison") is a person and resident of New Jersey. Amison is a student at George Mason University.

6. As used herein, Plaintiff and the Class will be collectively referred to as "Plaintiffs."

7. Defendant George Mason University ("University") is a public university that was originally founded in 1956 as the Northern Virginia branch of the University of Virginia. The institution that is now named George Mason

University which opened in September 1957 and became an independent institution in 1972.

8. Defendant The Rectors and Visitors of George Mason University is a corporate body who exercise their authority principally in policymaking and oversight ("Rectors").

9. Does 1-25, inclusive, are fictitious names of Defendants sued herein because their true names and capacities are unknown to Plaintiff at this time.

## JURISDICTION AND VENUE

10. Plaintiff's and the Class' claims arise pursuant to 42 U.S.C. §1983. There is supplemental jurisdiction pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1367.

11. This court has personal jurisdiction over Defendants because Defendants maintain their principal places of business in this District.

12. Venue properly lies in this Court under 28 U.S.C. §1391. Defendant George Mason University is a public school created under Virginia Code Title 23, Chapter 9.1, incorporated in and with its principal place of business in the Commonwealth of Virginia, and is considered to reside in this judicial district. The events and omissions giving rise to Plaintiffs' claims occurred within this judicial district.

## FACTUAL BACKGROUND

13. Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

14. Several students at the University have been falsely accused of academic misconduct and have been poorly handled by the Office of Academic Integrity.

15. The Computer Science Department at the University has a practice of accusing students of academic misconduct and not providing them with a fair and legal adjudication, thus denying them of their due process rights.

16. The Computer Science Department falsely accuses large quantities of students of cheating. The department further incorrectly processes honor code violations and, as a result, students get kicked out of the University.

17. Plaintiff is a student in the College of Engineering and Computing (previously known as the Volgenau School of Engineering) at the University located in Fairfax, Virginia pursuing a degree in Cyber Security Engineering.

18. On May 20, 2020, Plaintiff received an email accusing her of violating the University's Honor Code.

19. The University contends that computer science professors at the University found similarities between her academic assignment and the assignment of other students.

20. Plaintiff was accused of violating the University's Honor Code sections:

   a. HC.1D: Providing or attempting to benefit from unauthorized academic material and assistance: This includes but is not limited to the posting or enabling of posting of homework assignments and/or exams or solutions on websites; and,

   b. HC.1E: Violation of course requirements regarding integrity: This includes syllabus violations as well as violations of instructions related to integrity that appear in the course.

21. Plaintiff received a failing grade of 24% on the assignment which she was accused of cheating.

22. Plaintiff was also accused by Professor Mark Synder of violating the Honor Code in the Computer Science Department in Course CS 112 in Fall of 2018 for having similar lines of code as other students on a project.

23. Plaintiff used a code from the textbook approved by the professors and paid for, and other coding resources. Nonetheless, Amison took responsibility for this allegation and as a result, took an F in the course, paid a fee to take an ethics seminar, retook the course, and repaid the fees and fines to take the course and the lab over.

24. Similar to the instance at hand, all resources used by Amison had been approved per the class syllabus.

25. Because of the first cheating allegation while taking CS 112, Amison was extremely careful to not act in any way that could create the illusion of academic misconduct.

26. On June 29th, 2020, the Honor Committee reviewed Amison's case.

27. Several key pieces of evidence were not provided in advance of the hearing including the limitations on the MOSS software.

28. Amison was not notified that her work was supposedly reviewed by class lecturers. The provided referral form did not refer to any manual review of Amison's work nor did it identify who performed the review.

29. Had Amison been aware of the manual review, she could have prepared questions concerning the review and called each witness who performed the review.

30. During the June 29th hearing, Professor Dimitriadis, an expert in computer science, provided highly prejudicial expert testimony.

31. Professor Dimitriadis' principal opinions were:

a. MOSS is a reliable detector of plagiarism.

b. The MOSS scores for Amison demonstrated plagiarism.

c. The code in question was "unorthodox."

d. Despite obvious differences in the code, the questioned code was the same.

32. Professor Dimitriadis provided very specific opinions that influenced the Honor Committee.

33. Concerning the nature of the code, Professor Dimitriadis never considered how Amison came to develop the questioned code. Professor Dimitriadis simply concluded without proper evaluation of the facts and circumstances that the questioned code must be copied.

34. Amison's expert witness, Keith Altman, was sequestered from the hearing during the time of Professor Dimitriadis' testimony. Altman's absence denied Amison the ability to have an expert review the testimony of the professor and assist in cross-examination.

35. Amison, as a student of computer programing, did not have the ability to understand the nuances of Professor Dimitriadis's testimony.

36. Professor Dimitriadis was allowed to be present for Plaintiff's expert testimony and was allowed to cross-examine the expert.

37. Amison was provided no opportunity to rebut or cross-examine Professor Dimitriadis' opinions.

38. On July 1, 2020, Amison received notice that she had been found responsible for two Honor Code allegations.

   a. HC.1D: Providing or attempting to benefit from unauthorized academic material and assistance: This includes but is not limited to the posting or

enabling of posting of homework assignments and/or exams or solutions on websites; and,

b. HC.1.E: Violation of course requirements regarding integrity: This includes syllabus violations as well as violations of instructions related to integrity that appear in the course.

39. The Committee came to this finding, in part, by using "MOSS" or "Measure of Software Similarity" to detect evidence of copying in program solutions.

40. The Committee found that Amison was referred to the Honor Committee because 78% of one of her assignments matched one student and 43-70% of her assignment matched to five other students.

41. Other universities have found that using MOSS does not work well on short programs such as the assignment Amison was accused of cheating on. Another characteristic is that these systems do not work well for short, highly constrained solutions.

42. Experts have held that if there is not much room for variation in the first place, similarity may not indicate collusion. Thus, assignments with shorter than two pages of code (like Amison's assignment) are not usually worth checking with systems like MOSS.

43. Amison's assignment contained less than two pages worth of code and when removing the project headers and comment lines, there are less than 50 lines of code. The questioned portion of Amison's code amounts to less than 20 lines.

44. During Amison's hearing, a proponent of the MOSS results did not provide the limitations of the results.

45. Further, the panel hearing the referral did not have the technical knowledge to properly place the MOSS results in context.

46. The sanction for Amison's violations is a one-semester suspension from the University and a grade of F in the course.

47. As stated in the University's College of Engineering and Computing (CEC) policies, if a student fails a class three times, they are removed from VSE. Thus, Amison would be removed from the engineering program.

48. When Amison first got the May 20th email, stating that she was accused of violating the Honor Code, she reached out to her academic advisor, Dr. Tom Winston ("Winston").

49. Winston was shocked upon hearing of this allegation knowing how much time, effort, and dedication Amison was putting not only into the CS 112 course but all of her classes. Since this interaction, Amison has been in constant contact with Winston.

50. Winston then asked for Amison's personal email and in a private email, informed her about the scandals going on between the Cyber Engineering and Computer Science departments.

51. In this private email, Winston alluded to the fact that the Computer Science Department at the University frequently accuses students of academic misconduct and does not provide them with fair adjudications.

52. Specifically, Winston stated that "[the Computer Science Department] is a group of paranoid professors who think that everybody is cheating all the time." He further stated that "they [the Computer Science Department] process incorrect Honor Code Violations constantly, and students get kicked out of George Mason University as a result."

53. Winston indicated that the Computer Science Department is inclined to make these frequent allegations of cheating due to the politics of the University departments. Specifically, the Computer Science Department has "an axe to grind" with the Cyber Security Engineering Department because the Cyber Security Engineering Department is taking jobs from them.

## CLASS ACTION ALLEGATIONS

54. Plaintiffs bring this action on their own behalf and on behalf of a proposed Class of all other persons similarly situated pursuant to F.R.C.P. 23(b)(2) and 23(b)(3). This action is brought by the named Plaintiff on behalf of all individuals who have been taken advantage of by Defendants' deceptive practices through advertisements and representations, specifically individuals who:

Were students at George Mason University enrolled in CS 112 who were accused of academic misconduct.

55. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with Plaintiff's motion for class certification, or at any other time, based on, *inter alia,* changing circumstance and/or new facts obtained during discovery.

56. *Numerosity:* This class is estimated to be composed of approximately 500 of students.

57. *Existence and Predominance of Common Questions of Fact and Law:* There are questions of law or fact common to the members of the class such that common questions predominate over questions affecting only individual members. Individual questions do not predominate over common questions because (a) each

class member endured a consequence of being falsely accused of violating the University's honor code.

58. There is a well-defined community of interest in questions of law and fact affecting the Class. These questions of law and fact predominate over individual Class Members, including, but not limited to, the following:

a. Whether, during the Class Period, Defendants violated Plaintiff and the Class's due process rights;

b. Whether Class Members are entitled to relief and if so, in what amount as a result of the conduct alleged herein;

c. Whether Plaintiff and Class Members are entitled to an award of reasonable attorney's fees, pre-judgment interest, and costs of suit.

59. *Typicality:* The claims of the Class Representative are typical of, and not antagonistic to, the claims of the Class Representative are typical of, and not antagonistic to, the claims, violations of law, and resulting harms suffered by all Class members.

60. *Adequacy:* The Plaintiff Class Representative will fairly and adequately assert and protect the interests of the Class. Plaintiff's counsel knows of no conflicts of interest between the Class Representative and absent Class members with respect to the matters at issue in this litigation, the Class representatives will vigorously prosecute the suit on behalf of the Class.

61. *Superiority:* The maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice. Because of the modest size of individual Class Members' claims, few, if any, Class Members could afford to seek legal redress of the wrongs complained herein on an individual basis. The prosecution of separate actions by individual members of the Class could result in inconsistent or varying adjudications with respect to individual members of the Class. Absent class action, Class Members would likely not recover, or would not likely have the chance to recover, damages and Defendant will be permitted to continue its misconduct.

62. A class action is an appropriate and superior method for the fair and efficient adjudication of the controversy given the following factors:

   a. Common questions of law and/or fact predominate over any individual questions that may arise, and, accordingly, there would accrue enormous economies to both the Court and the Class in litigating the common issues on a class-wide basis instead of on a repetitive individual basis;

   b. No unusual difficulties are likely to be encountered in the management of this class action in that all questions of law and/or fact to be litigated at the liability stage are common to the Class.

63. To the best of Plaintiff's knowledge, no other action is pending on the subject matter of this case in any Court.

64. As such, Plaintiff seeks class certification under F.R.C.P. 23.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. §1983

### (On Behalf of Plaintiff and the Class)

65. Plaintiff adopts by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

66. Plaintiff brings the claim individually and on behalf of the members of the Class.

67. Plaintiffs have a constitutionally protected property interest in their education at George Mason University and the credits purchased for the Course CS 112.

68. Plaintiffs also have a constitutionally protected liberty interest in their name, reputation, and integrity.

69. The due process provisions of the Fourteenth Amendment to the United States Constitution apply to the disciplinary process used by George Mason University against Kylie Amison and other plaintiffs.

14

70. Plaintiffs were entitled to process commensurate with the seriousness of the charge of cheating and the potential discipline and sanctions faced. The allegations of cheating were very serious and resulted in harsh sanctions, as well as the prospect of a lifelong stigma that will foreclose future educational and employment opportunities.

71. Plaintiffs were entitled to fundamentally fair procedures to determine whether they were responsible for the alleged cheating, and George Mason University failed to provide adequate due process.

72. Plaintiffs has been denied their due process rights by Defendants in violation of the Fourteenth Amendment in that:

a. Plaintiffs were not provided relevant information in advance of hearing. Not having provided this information in advance was highly prejudicial to Plaintiffs.

b. The expert testimony provided by computer science expert Professor Dimitriadis was highly prejudicial. The Professor's opinions regarding the MOSS software were unreliable in that he withheld the material limitations of MOSS from the committee.

c. Plaintiffs were precluded from meaningful cross examination or even an opportunity to rebut the unreliable opinions of Professor Dimitriadis.

    d. The findings of the committee conducting the hearing were unreasonable in light of the evidence presented.

73. As a result of the due process violations herein, Plaintiffs were wrongly disciplined and suffer ongoing harm to their good name and educational progress.

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACT

74. Plaintiffs adopt by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

75. Plaintiff and the Class and Defendant George Mason University entered into a contract by which Defendant offered admission to The University and for which Plaintiff and the Class accepted The University's offer and attended George Mason University.

76. There was a mutual exchange of consideration by which Plaintiff and the Class attended the University involving payments and expenditure of time and George Mason University made its services available to Plaintiff and the Class including educational opportunities.

77. As part of the contract was the existence of policies set forth by the University. As a condition of attending George Mason University, Plaintiff and the

Class and the University were both expected to be bound by these policies. Included within those policies concerning academic misconduct. These policies were part of the bargain between Plaintiff and George Mason University. Without agreeing to abide by those policies, Plaintiff and the Class would not have been permitted to attend George Mason University.

78. Defendant George Mason University breached the contract by not investigating Plaintiff and the Class' academic misconduct allegations in a fair and impartial way.

79. As a result of Defendant's breach of the contract, Plaintiff and the Class have been damaged in that they have been forced to expend significant time and resources defending the allegations where the investigation and hearing was tainted by unreliable, biased evidence.

80. As a result of its misconduct, George Mason University is liable to Plaintiff and the Class for the full measure of damages and other relief allowed under applicable law.

## THIRD CAUSE OF ACTION
### VIOLATION OF CIVIL RIGHTS UNDER U.S.C § 1983- CONSPIRACY

81. Plaintiffs adopt by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

82. The Defendants, acting in concert with each other, conspired to deny Plaintiffs of their civil rights, specifically their due process in violation of the Fourteenth Amendment to the U.S. Constitution in the following non-exclusive ways:

   a. The investigation into the allegations against Plaintiff was conducted improperly, making it highly unlikely that Plaintiff could receive a fair adjudication of the matter.

   b. The University intends to falsely accuse students of cheating in large quantities.

   c. The University colluded to limit Plaintiffs from a fair adjudication by withholding material information and allowing highly prejudicial testimony to sway the decision of the committee.

83. As a result of the concerted unlawful and malicious conspiracy of all the Defendants, Plaintiff and the Class were denied their right to due process and the course of justice was impeded.

84. As a direct and proximate result of the unlawful and malicious conspiracy of the Defendants, Plaintiff and the Class have suffered damages not only compensatory but punitive damages are appropriate to be awarded, all under 42 U.S.C. §1983.

**PRAYER FOR RELIEF**

85. **WHEREFORE**, Plaintiff, individually and on behalf of the Class prays for judgment against Defendants, as follows, as appropriate to each cause of action alleged and as appropriate to the particular standing of Plaintiff and Class of similarly situated individuals:

   a. Finding that this action satisfies the prerequisites for maintenance as a class action under Fed. R. Civ. 23(b)(2) and 23(b)(3), and applicable case law and certifying the Class and subclass defined herein;

   b. Designating Plaintiff as representative of the Class and their counsel as Class Counsel;

   c. For declaratory relief that Defendants' conduct violated Plaintiff's and the Class' due process rights under the Fourteenth Amendment to the U.S. Constitution.

   d. For injunctive relief declaring that Defendants' actions unlawful, and enjoining preliminarily and permanently, investigation and hearing of Plaintiff and the Class because the investigation and hearing was conducted in an unprofessional and prejudicial manner, it was tainted, and that evidence obtained through MOSS software be excluded.

   e. Award the Class compensatory, general, and special damages as appropriate and as permitted by law.

   f. Award the Class costs, fees, and expenses as appropriate.

g. Provide any other Relief this Court might deem fair, just, and equitable.

## DEMAND FOR JURY TRIAL

86. Plaintiff and the Class hereby demand a trial by jury on all issues stated in this action.

Dated: June 27, 2022                           Respectfully Submitted,

*Kylie Amison*
Kylie Amison, *Pro Se*
170 Acres Drive
Hamilton Square, NJ 08690
Phone: (609) 672-4539
Email: kyliemorgana@gmail.com