IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| KYLIE AMISON, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) Civil Action No.: 1:22-cv-00731 |
| | ) |
| RECTOR AND VISITOR OF GEORGE MASON UNIVERSITY, *et al.* | ) |
| | ) |
| *Defendants*. | ) |

**REPLY IN SUPPORT OF RECTOR AND VISITORS OF GEORGE MASON UNIVERSITY AND GEORGE MASON UNIVERSITY'S RULE 59 AND 60 MOTION TO RECONSIDER, OR, IN THE ALTERANTIVE, MOTION TO DISMISS UNDER RULE 12(b)(1)**

The issue presented by the instant motion is whether the Rector and Visitors of George Mason University and George Mason University (collectively "Mason") can be subject to suit under 42 U.S.C. § 1983 and for breach of contract or whether the Eleventh Amendment bars Plaintiff's claims against Mason. Whether the Court treats Mason's motion as a motion for reconsideration under Rule 59 or 60 or a new motion to dismiss under Rule 12(b)(1), black letter Supreme Court and Fourth Circuit law requires dismissal of the claims against Mason because the Eleventh Amendment bars this Court from exercising jurisdiction over those claims. Ms. Amison's opposition fails to engage with any of the relevant case law and instead makes irrelevant and incorrect arguments.

    **I.    Mason Is an Arm of the State that Possess Eleventh Amendment Immunity.**

Ms. Amison attempts to argue that Mason is not an arm of the state that possesses Eleventh Amendment immunity. *See* Opp. at 8. As an initial matter, Ms. Amison's argument is not well taken since in her opposition to Mason's motion to dismiss she conceded that she "cannot seek compensatory damages on her § 1983 claim," Dkt. 15 at 6, something that would only be the case if Mason was an arm of the state possessing Eleventh Amendment immunity. Having conceded that Mason has Eleventh Amendment immunity previously, Ms. Amison cannot not now claim otherwise.

Her new argument—for which she cites no case law or evidence—also runs counter to the "over-whelming precedent" of the "[a]lmost universal[ ]" holdings of courts who have decided that public state universities are "arms of the state." *Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 262-63 (4th Cir. 2005). Unsurprisingly, courts have repeatedly held that Mason is a "state-supported university that is entitled to the same sovereign immunity as the Commonwealth of Virginia." *Adkins v. Rector & Visitors of George Mason Univ.*, 15cv879, 2015 U.S. Dist. LEXIS 128150, at *3 (E.D. Va. Sept. 23, 2015); *Shepard v. Irving*, 204 F. Supp. 2d 902, 912 (E.D. Va. 2002) ("GMU is a state supported institution of higher education," and "a state supported university enjoys the same sovereign immunity as States."); *Alston v. Experian Info. Solut., Inc.*, PJM 15-3558, 2016 U.S. Dist. LEXIS 117939, at *8 (D. Md. Aug. 31, 2016) ("The Court will dismiss all claims against GMU for lack of subject matter jurisdiction because it enjoys sovereign immunity."). Indeed, the Fourth Circuit has twice treated Mason as a state entity protected by Eleventh Amendment immunity. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005) (analyzing whether Mason's Eleventh Amendment immunity was abrogated by Congress for ADA Title II claims and whether Mason

had waived its Eleventh Amendment immunity from Rehabilitation Act claims); *Litman v. George Mason Univ.*, 186 F.3d 544 (4th Cir. 1999) (analyzing whether Mason had waived its Eleventh Amendment immunity from Title IX claims).

Likewise, courts have repeatedly held that Mason's sister state universities in Virginia have Eleventh Amendment immunity. *See Amaram v. Va. State Univ.*, 476 F. Supp. 2d 535, 539 (E.D. Va. 2007) ("Virginia State University is a constituted element of the Commonwealth of Virginia" and claims against it are barred by Eleventh Amendment); *Tigrett v. Rector & Visitors of the Univ. of Vir.*, 97 F. Supp. 2d 752, 756 (W.D. Va. 2000) ("This Court has already held that the Rector and Visitors of the University, as an instrumentality of the state, is immune from suit in federal court."); *Carboni v. Meldrum*, 949 F. Supp. 427, 433 (W.D. Va. 1996) (noting "surprise" at plaintiff's argument that Virginia Tech is not an arm of the state and holding that it is "entitled to Eleventh Amendment immunity"); *Byerly v. Va Polytechnic Inst. & State Univ.*, 7-18-cv-16, 2019 U.S. Dist. LEXIS 49952, at *7 (W.D. Va. Mar. 21, 2019) ("The Eleventh Amendment blocks the exercise of federal jurisdiction over such claims and extends to suits against state agencies, including Virginia Tech."); *Richard Anderson Photography v. Radford Univ.*, 633 F. Supp. 1154, 1158 (W.D. Va. 1986) ("[I]t is quite clear in Virginia that state colleges and universities constitute 'arms of the state' for purposes of the Eleventh Amendment" and holding that "Radford University enjoys whatever immunity the State enjoys."); *Demuren v. Old Dominion Univ.*, 33 F. Supp. 2d 469, 475 (E.D. Va. 1999) ("[A] number of circuits have ruled that state colleges and universities are agents of the state, and thus immune from suit under the Eleventh Amendment . . . and this court holds that ODU is immune from suit."); *Wilson v. Univ. of Va.*, 663 F. Supp. 1089, 1092 (W.D. Va. 1987) ("It cannot be disputed that the University of Virginia is an arm of the state entitled to eleventh amendment protection.").

Ms. Amison's opposition fails to address any of this case law in making her assertion that Mason is not a state entity entitled to Eleventh Amendment immunity. She also fails to cite a single case in which a court has found that Mason, or any other public university in the Commonwealth of Virginia, is not a state entity covered by the Eleventh Amendment.

Additionally, Ms. Amison's arguments for why Mason is not a state entity—all of which are made without any citation or support—*see* Opp. at 8, are wrong. The Fourth Circuit's "Eleventh Amendment jurisprudence differentiates arms or alter egos of the state from mere political subdivisions of the State such as counties or municipalities, which, though created by the state, operate independently and do not share the state's immunity." *Lawson v. Gault*, 828 F.3d 239, 250 (4th Cir. 2016). As an initial matter, Mason is not a "political subdivision" of the Commonwealth; it is public institution of higher education established by the Commonwealth. *See* Va. Code § 23.1-1500. The Fourth Circuit has also outlined four "nonexclusive factors" used to determine whether an entity is an arm of the state: "(1) whether any judgment against the entity as defendant will be paid by the State . . . ; (2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions; (3) whether the entity is involved with state concerns as distinct from . . . local concerns; and (4) how the entity is treated under state law, such as whether the entity's relationship with the State [is] sufficiently close to make the entity an arm of the State." *Id.* at 251. All of these factors demonstrate that Mason is an arm of the state.

*First*, Ms. Amison's *ipse dixit* assertion that claims against Mason would not be paid out of the state treasury is wrong. Mason depends on appropriations from the

4

Virginia General Assembly for its budget, including the payment of judgments against it. See H.B. 30, 2022 Spec. Sess. I (Va. 2022) ("Budget"), ch. 2, items 163-66, https://bit.ly/3savwyO; *id.* at item 64, https://bit.ly/3UpBlFh (providing that "[c]laims against agencies . . . shall be paid" from their state appropriations); *Carboni*, 949 F. Supp. at 433 (finding VT is an arm of the state because it is "funded by the Commonwealth"). Moreover, any money received by Mason is required by statute to be paid into the "state treasury." Va. Code § 2.2-1802. Therefore, any judgments paid by Mason must come from the state treasury. Additionally, Mason is insured against claims by the Commonwealth's Risk Management plan which is managed by the Commonwealth's Department of Treasury and funded through appropriations from the General Assembly to the Department of Treasury. *See* Budget at item 277; *see also* Va. Code § 2.2-1837.

*Second*, Mason is controlled by the Commonwealth. The Virginia Code section creating Mason, explicitly states that Mason's board "shall at all times be under the control of the General Assembly." Va. Code § 23.1-1500. Likewise, all members of Mason's governing body are appointed by the Governor. *See* Va. Code § 23.1-1501. As the Fourth Circuit has held, "[t]he fact that all of the University's decisionmakers are appointed by the Governor is a key indicator of state control." *Md. Stadium*, 407 F.3d at 264; *see also Carboni*, 949 F. Supp. at 433 (finding VT is an arm of the state because it is "controlled by Boards of Visitors who are appointed by the Governor"). Mason also lacks the ability to tax, which is a "strong indication that an entity is more like an arm of the state than like a county or city." *Id.* Additionally, all legal services for Mason are required to "be rendered and performed by the Attorney General" of Virginia. Va. Code § 2.2-507; *see Md. Stadium* 407 F.3d at 264-65 (fact that Attorney General represented university

demonstrated lack of autonomy from state).

*Third*, as the Fourth Circuit has held, "[h]igher education is an area of quintessential state concern and a traditional state governmental function." *Md. Stadium*, 407 F.3d at 265. And as with the University of Maryland, analyzed in *Md. Stadium,* Mason's "mission of providing higher education for [Virginia's] youth, is clearly an area of statewide concern." *Id.; see Mason Virginia Promise*, Office of the President, https://president.gmu.edu/initiatives/mason-virginia-promise (last visited Jan. 9, 2023) ("The Mason Virginia Promise is a pathway to a bachelor's degree or help starting a business for every Virginian who wants one."). Ms. Amison is also incorrect that Mason has a "fixed geographic location on the George Mason campus in Fairfax, Virginia." Opp. at 8. Mason has seven different campuses located throughout the Commonwealth (and a campus in South Korea). *See* George Mason University, https://www.gmu.edu/about-mason/locations, (last visited Jan. 9, 2023); *see also Md. Stadium*, 407 F.3d at 265 (noting that a factor in favor of finding the University of Maryland is an arm of the state is that it has "branch campuses located across the state"). Ms. Amison also oddly points to the fact that Mason educates "students from many states and countries other than Virginia." Opp. at 8. But that fact only further demonstrates that Mason is not focused on "local concerns," and is instead focused on bringing students from around the globe to Virginia to live, learn, and work. *See Carboni*, 949 F. Supp. at 433 (finding VT is an arm of the state because it "serve[s] the important government function of educating the State's citizens and others").

*Finally,* Ms. Amison does not make any argument as the fourth factor, nor could she since state law clearly treats Mason as an instrumentality of the state. *See* Va. Code §

6

23.1-1500; 8VAC35 (identifying Mason as "VAC Agency No. 35); *Cuccinelli v. Rector and Visitors of the Univ. of Va.*, 283 Va. 420, 427 (Va. 2012) ("[W]e have consistently held that UVA is an arm or agency of the Commonwealth. . . . The same is true of other state universities."); *George Mason Univ. v. Floyd*, 275 Va. 32, 37 (Va. 2008) ("It is clear that GMU qualifies as an agency of the Commonwealth."); *Cunningham v. George Mason Univ.*, 82 Va. Cir. 301, 302 (Fairfax Cir. Ct. 2011) (Mason "is an instrumentality of the Commonwealth, it is de jure the Commonwealth itself . . . . Therefore George Mason enjoys sovereign immunity.").

In short, as both federal and state courts have repeatedly held, Mason is clearly an "arm of the state" that possesses Eleventh Amendment immunity.

### II. Mason's Eleventh Amendment Immunity Bars the Claims Against It.

Ms. Amison's opposition also fails to cite, let alone attempt to distinguish, the numerous binding Supreme Court and Fourth Circuit cases holding that "[a]bsent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court," and that this bar applies "regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144, 146 (1993). *See also Papasan v. Allain*, 478 U.S. 265, 276 (1986) ("in the absence of consent, a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment" and "[t]his bar exists whether the relief sought is legal or equitable"); *Roach v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 74 F.3d 46, 48 (4th Cir. 1996) ("It is well established that the Eleventh Amendment bars suit in federal court by an individual citizen against a sovereign state of the Union."). Nor could she, since there is no way to dispute or distinguish this black letter law.

Instead, Ms. Amison makes two incorrect arguments for why the Eleventh Amendment does not bar the Court from exercising jurisdiction here. There are only three circumstances in which the Eleventh Amendment does not bar claims against a state entity: "if (a) there exists a valid abrogation of that immunity by Congress, (b) a state has clearly and unequivocally waived its immunity, or (c) the prosecution of an action fits comfortably within the doctrine of *Ex parte Young*." *Shepard v. Irving*, 204 F. Supp. 2d 902, 912 (E.D. Va. 2002). Ms. Amison does not contend (nor could she) that Mason has waived its immunity, and her arguments regarding abrogation and *Ex Parte Young* are simply incorrect.

Regarding abrogation, Ms. Amison points to the fact that Congress abrogated states Eleventh Amendment immunity from Title IX and other discrimination claims. This is correct but irrelevant because Ms. Amison has not asserted a Tile IX claim or any claim under any other federal statute prohibiting discrimination. She has only asserted claims under § 1983 for violation of due process and a breach of contract claim. *See* Am. Compl. ¶¶ 73-92. Ms. Amison does not cite to any part of her complaint, nor could she, for her assertion that she has claimed discrimination. Ms. Amison's abrogation argument is, therefore, an irrelevant *non-sequitur*.

As to the claims Ms. Amison actually has alleged, she again fails to engage with the binding Supreme Court and Fourth Circuit law that requires dismissal of her claims. The Supreme Court has explicitly stated that "if a § 1983 action alleging a constitutional claim is brought directly against a State, the Eleventh Amendment bars a federal court from granting *any relief* on that claim." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120 (1984) (emphasis added). Likewise, the Fourth Circuit has held that "it has long been settled" that § 1983 does not abrogate the states' sovereign immunity. *In re Sec'y of the Dep't of Crime*

*Control & Pub. Safety*, 7 F.3d 1140, 1149 (4th Cir. 1993) (*citing Quern v. Jordan*, 440 U.S. 332, 342 (1979). The Supreme Court and the Fourth Circuit have also both held that breach of contract claims against state entities are barred by Eleventh Amendment immunity. *See Pennhurst*, 465 U.S. at 121 (Eleventh Amendment applies to "state-law claims brought into federal court under pendent jurisdiction"); *Nofsinger v. Va. Commonwealth Univ.*, 523 Fed. Appx. 204, 206 (4th Cir. 2013).

Ms. Amison also again attempts to rely on the *Ex parte Young* doctrine despite acknowledging in her brief that the doctrine only applies to claims against "state officials." Opp. at 11. This motion only deals with claims against Mason, the state entity, not claims against state officials. Yet again, Ms. Amison fails to address any of the binding Supreme Court and Fourth Circuit cases cited by Mason that the Eleventh Amendment bar exists "whether the relief sought is legal or equitable," *Papasan*, 478 U.S. at 276, and that *Ex Parte Young* "has no application in suits against the States and their agencies," *P.R. Aqueduct*, 506 U.S. at 146. *See also Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012) (prospective injunction exception is "inapplicable" where the claims are not against state officials); *Va. Ass'n of Towing & Recovery Operators v. Virginia*, 78 Fed. Appx. 867, 867 (4th Cir. 2003) ("[T]he only defendant VATRO sued was the Commonwealth of Virginia, consequently *Ex parte Young* does not apply."). *Ex parte Young* simply does not apply to the claims against Mason.

Ms. Amison also fails to respond to Mason's argument that, even if the *Ex Parte Young* doctrine could apply (and it does not), she lacks standing to bring a claim for injunctive relief under the Supreme Court's holding in *L.A. v. Lyons*, 461 U.S. 95, 111 (1983). *Lyons* requires that Ms. Amison demonstrate that she "will again be wronged in a similar way." *Id.* Ms. Amison fails to explain how she will be wronged again in the future as she does not allege that

she plans to take CS112 (or any other class at Mason) again, let alone that she will be accused of cheating again. While Ms. Amison asserts that she continues to "suffer damage to her academic and professional reputation," Opp. at 9 (an assertion for which she provides no support), that is irrelevant to the *Lyons* analysis which requires that she demonstrate that she "will *again* be wronged in *a similar way*." 461 U.S. at 111 (emphasis added). That Ms. Amison may be continuing to suffer harm from a "past wrong[ ]" does not "amount to that real and immediate threat of injury necessary to make out a case or controversy" necessary for injunctive relief. *Id*. at 103; *see also Stover v. Coll. of William & Mary in Va.*, Civil Action No. 4:21cv150, 2022 U.S. Dist. LEXIS 190466, at *14-15 (E.D. Va. Oct. 18, 2022) ("Without a sufficient likelihood that Plaintiff will be wronged again in a similar way, Plaintiff's allegations of future harm are neither imminent nor concrete and she does not have standing to seek injunctive relief under . . . § 1983.")

Ms. Amison has failed to provide any basis for overcoming Mason's Eleventh Amendment immunity. Ms. Amison's claims against Mason are, therefore, "proscribed by the Eleventh Amendment," and must be dismissed. *Papasan*, 478 U.S. at 276; *Roach*, 74 F.3d at 48 ("In effect, the Eleventh Amendment limits the ability of a federal district court to exercise subject-matter jurisdiction over an action brought against a state or one of its entities.").

## CONCLUSION

For the reasons stated in Mason's opening brief and herein, the claims against Mason must be dismissed.

January 10, 2023                             RESPECTFULLY SUBMITTED,

                                             _____/s/_____
                                             Eli S. Schlam, Asst. Atty. Gen.
                                             Virginia Bar Number 92987
                                             George Mason University
                                             4400 University Drive,
                                             MS 2A3
                                             Fairfax, VA 22030
                                             Phone: (703) 993-2619
                                             Fax: (703) 993-2340
                                             eschlam@gmu.edu

                                             *Attorney for The Rector and Visitors of George Mason University and George Mason University*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of January 2023, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to counsel of record in this case.

                                                         /s/
Eli S. Schlam, Asst. Atty. Gen.
Virginia Bar Number 92987
George Mason University
4400 University Drive,
MS 2A3
Fairfax, VA 22030
Phone: (703) 993-2619
Fax: (703) 993-2340
eschlam@gmu.edu