**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| KYLIE AMISON, | ) | |
| | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:22-cv-00731 |
| | ) | |
| RECTOR AND VISITOR OF GEORGE | ) | |
| MASON UNIVERSITY, *et al.* | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |

---

**MEMORANDUM IN SUPPORT OF SOCRATES DIMITRIADIS'S
RULE 12(b)(1) AND 12(b)(6) MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

---

In June 2020, Ms. Kylie Amison was found responsible by the George Mason University ("Mason") Honor Committee of violating Mason's Honor Code by cheating in Professor Socrates Dimitriadis' Computer Science 112 course.  She is now attempting to sue Professor Dimitriadis, in both his official and personal capacity, under 42 U.S.C. § 1983 for depriving her of a constitutionally protected interest without due process.[1]  However, Ms. Amison has not, and cannot, allege that Professor Dimitriadis "***acted personally*** in the deprivation of the plaintiff's rights," as is required to state a claim under § 1983 against a state official.  *Williams v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (emphasis added).  Indeed, Ms. Amison cannot allege that Professor Dimitriadis deprived her of anything since, as alleged in the Amended Complaint, his only role in the Honor Code process was reporting Ms. Amison for alleged cheating and testifying as a witness at her Honor Committee hearing.  Regardless of whether she may have a viable § 1983 due process claim (and, as explained below, she does not), Professor Dimitriadis is not the proper defendant.  He is no more liable for a due process violation than an individual who reports an alleged crime and then testifies at a trial.

Moreover, Ms. Amison's § 1983 due process and civil conspiracy must be dismissed because (1) they are time-barred by the statute of limitations; (2) she has failed to allege a constitutionally protected property or liberty interest; (3) the Amended Complaint demonstrates that she received notice of the allegations against her and a hearing before the Honor Committee where she was able to present her response to the allegations, including presenting her own expert witness, all the due process that could possibly be required; (4) she has failed to allege the

---

[1] This motion deals only with the claims against Professor Dimitriadis.  A separate motion has been filed regarding the claims against Rectors and Visitors of George Mason University and George Mason University. Additionally, counsel has conferred with Ms. Amison's counsel, and they have agreed that Count II of the Amended Complaint (Breach of Contract) is not asserted against Professor Dimitriadis.  Therefore, this motion does not address Count II.

required elements of a civil conspiracy claim; and (5) the civil conspiracy claim is barred by the "intracorporate conspiracy doctrine," which precludes a finding of conspiracy among employees of the same organization.

Even if all of those issues did not require dismissal, Ms. Amison's claim against Professor Dimitriadis in his individual capacity would need to be dismissed on the basis of qualified immunity. The Fourth Circuit's recent holding in *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 238-40 (4th Cir. 2021) is dispositive here. In *Sheppard*, the Fourth Circuit held explicitly that there is "no clearly established right to continued enrollment in higher education" and as a result a university administrator was entitled to qualified immunity for a § 1983 due process claim related to a university disciplinary proceeding. *Id.* Even if *Sheppard* did not bar Ms. Amison's individual capacity claim, she still could not overcome qualified immunity because she cannot point to any established law specific to "the circumstances at hand;" i.e. establishing that a professor violates a student's due process rights by accusing her of cheating and testifying at her disciplinary hearing. *Campbell v. Galloway*, 483 F.3d 258, 271 (4th Cir. 2007).

Ms. Amison's official capacity § 1983 claims fare no better. It is black letter law that the Eleventh Amendment bars official capacity § 1983 claims for monetary relief. *Ky. v. Graham*, 473 U.S. 159, 169 (1985). Nor does the "narrow" *Ex parte Young* exception to Eleventh Amendment immunity apply to her claims for injunctive relief because Ms. Amison is not seeking "prospective relief" nor can she alleged an ongoing constitutional violation since her Honor Code case concluded in 2020. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Eleventh Amendment immunity, therefore, prevents the Court from exercising subject matter jurisdiction over the official capacity claims. Additionally, the Court

does not have subject matter jurisdiction over the injunctive relief claims because Ms. Amison

lacks standing to bring those claims both under *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)

(requiring a showing of a "real or immediate threat that the plaintiff will be wronged again") and

the traceability and redressability requirements of Article III standing.

## FACTUAL BACKGROUND

Plaintiff, Kylie Amison, was a student at Mason at the time the Amended Complaint was

filed.  Am. Compl. ¶ 16.[2]  Defendant, Professor Socrates Dimitriadis, is a professor of computer

science at George Mason University.  *Id.* ¶ 9

On May 20, 2020, Professor Dimitriadis contacted Ms. Amison to inform her that as a

result of the faculty "carefully analyzing students' submissions" they "found similarities between

[her] homework (and/or final exam) and at least one other student's work and/or materials found

online" and that as a result she was being referred for a violation of Mason's Honor Code.  *Id.*  ¶

22, *see* Ex. 1.[3]  Per Mason's Honor Code procedures, Ms. Amison could "access all information

in [her case] by submitting a request in writing" to the Office of Academic Integrity.  Ex. 2 at 4.[4]

A hearing was held on June 29, 2020 for the Honor Committee to review the allegations against

Ms. Amison, during which she had the opportunity to respond to the allegations and present

---

[2] Ms. Amison graduated from Mason in December 2022.

[3] On a motion to dismiss a court may consider "documents incorporated into the complaint by reference."  *Tallabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).  Paragraph 22 of the complaint references Ex. 1, the email sent by Professor Dimitriadis to Ms. Amison on May 20, 2020.  The names of other students who were blind copied on this email have been redacted.

[4] Ex. 2, Mason's Honor Code is referenced repeatedly in the Amended Complaint.  *See, e.g.*, ¶¶ 22, 24, 43, 53; *see also* n.3.

witnesses.[5]  *Id.* ¶ 30.  The Amended Complaint also alleges that Professor Dimitriadis testified at the Honor Committee hearing and provided his opinions.  *Id.* ¶ 34-36.  Following the hearing, the Honor Committee found that Ms. Amison had violated the Honor Code.  *Id.* ¶ 43.   As the referring faculty member, Professor Dimitriadis was not involved in administering the honor code proceeding nor was he involved in deciding whether Ms. Amison violated the honor code or the appropriate sanction.  *Id.* ¶¶ 43-45 (alleging that the Honor Committee found Ms. Amison responsible); *see also* Exs. 2 & 3.[6]

## STANDARD OF REVIEW

"A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  A complaint must be dismissed under Rule 12(b)(6) where it "fail[s] to state a claim upon which relief can be granted."  To survive a motion to dismiss, a complaint must contain sufficient factual matter which, accepted as true, "state(s) a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Courts "must consider the complaint in its entirety, as well as . . . documents incorporated in the complaint by reference, and matters of which a court may take judicial notice." *Tallabs*, 551 U.S. at 322.  A court "need not accept as true mere legal conclusions couched as factual allegations."  *Assa'ad-Faltas v. Virginia*, 738 F. Supp. 982, 985 (E.D. Va. 1989) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A court also should not accept as true allegations that are contradicted by documents incorporated by reference into the Complaint.  *See Veney v. Wyche*,

---

[5] Notably Ms. Amison's witness at the hearing, Keith Altman, is now serving as her counsel in this case.

[6] Ex. 3, the Honor Committee decision, is referenced in ¶ 43.  *See* n.3

4

293 F.3d 726, 730 (4th Cir. 2002); *Goines*, 822 F.3d at 166.  Finally, a plaintiff can "plead

himself out of court" by alleging facts that "demonstrate that he has no legal claim."  *N. Tr. Co.

v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995); *see also Schreiber v. Dunabin*, 938 F. Supp. 2d 587,

594 (E.D. Va. 2013).

For a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "a

court must dismiss a case where the court finds subject matter jurisdiction lacking."  *Medtronic,

Inc. v. Lee*, 151 F. Supp. 3d 665, 671 (E.D. Va. 2016).  Eleventh Amendment immunity and lack

of standing are both reasons why a Court would lack subject matter jurisdiction.  *See Kitchen v.

Upshaw*, 286 F.3d 179, 183-84 (4th Cir. 2002); *Long Term Care Partners, LLC v. United States*,

516 F.3d 225, 230 (4th Cir. 2008).

## ARGUMENT

### I.  COUNTS I AND III ARE BARRED BY THE STATUTE OF LIMITATIONS.

In § 1983 claims, federal courts apply the state statute of limitations for personal injury

actions.  *See Owens v. Okure*, 488 U.S. 235, 250 (1989). The applicable statute of limitations for

§ 1983 claims brought in Virginia courts is Virginia's two-year statute of limitations for personal

injury claims.  *See Crawford v. Herring*, 3:20-cv-744, 2021 U.S. Dist. LEXIS 133192, at *6

(E.D. Va. July 16, 2021).  "The statute of limitations period for § 1983 claims begins to run

when a plaintiff knows or has reason to know of his injury."  *Id.*

Here, Ms. Amison alleges that Professor Dimitriadis violated her "right to due process"

when he testified at her honor committee hearing on June 29, 2020, at which she was present.

Am. Compl. ¶¶ 42, 80.  Ms. Amison does not allege any additional action by Professor

Dimitriadis after June 29, 2020.  Therefore, Ms. Amison's claim again Professor Dimitriadis

accrued on June 29, 2020.  In order to comply with the statute of limitations as to her § 1983

claims against Professor Dimitriadis, Ms. Amison would have had to have filed her complaint by June 29, 2022.  However, Ms. Amison filed her initial complaint on June 30, 2022, after the expiration of the statute of limitations as to Professor Dimitriadis.  Her § 1983 claims must, therefore be dismissed.

## II.    COUNT I AND III MUST BE DISMISSED AS TO PROFESSOR DIMITRIADIS IN HIS INDIVIDUAL CAPACITY.

### A.  Professor Dimitriadis Did Not Violate Ms. Amison's Due Process Rights.

Count I of the Amended Complaint asserts a claim for violation of the Due Process Clause of the Fourteenth Amendment against Professor Dimitriadis under 42 U.S.C. § 1983.  In order to plead a due process claim a plaintiff must allege "(1) a cognizable 'liberty' or 'property' interest; (2) the deprivation of that interest by 'some form of state action;' and (3) that the procedures employed were constitutionally inadequate."  *Iota Xi Chapter of Sigma Chi Frater. v. Patterson*, 566 F.3d 138, 146 (4th Cir. 2009).

Crucially, in order to state a due process claim against Professor Dimitriadis specifically, Ms. Amison would need to plead that he "***through [his] own individual actions***, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662 676 (2009) (emphasis added).  As the Fourth Circuit has explained, "[t]o establish personal liability under § 1983 . . .  the plaintiff must affirmatively show that the ***official charged acted personally*** in the deprivation of the plaintiff's rights. . . .  That is, the ***officials own individual actions*** must have violated the Constitution."  *Williams*, 912 F.3d at 171 (emphasis added).

Assuming, *arguendo*, that Ms. Amison had a cognizable liberty or property interest, she has not alleged that Professor Dimitriadis deprived her of anything.  The only allegations regarding Professor Dimitriadis in the Amended Complaint are (1) that he sent Ms. Amison an email accusing her of cheating and (2) that during Ms. Amison's Honor Committee hearing, he

testified and gave his opinions in support of his accusations that Ms. Amison cheated.  *See* Am. Compl. ¶¶ 22, 34-36.  Neither accusing Ms. Amison of cheating nor testifying during her Honor Committee hearing deprived Ms. Amison of anything, let alone a constitutionally cognizable liberty or property interest.  Ms. Amison also does not allege that Professor Dimitriadis was personally responsible for administering or deciding her honor code case, nor could she given Mason's Honor Code procedures, which explain that the process is administered by Mason's Office of Academic Integrity and decided by the Honor Committee.  *See* Ex. 2; *see also* Compl. ¶¶ 43-45 (alleging Honor Committee found Ms. Amison responsible).  Indeed, Ms. Amison alleges that Professor Dimitriadis's role in the honor committee hearing was as an "expert" witness who provided testimony.  Am. Compl. ¶ 34.  If Ms. Amison's allegations were found sufficient to state a due process claim then any faculty member who refers a student for an academic integrity violation or any witness who testifies at a university academic integrity or disciplinary hearing could be sued for a due process violation.

Indeed, the Fourth Circuit's holding in *Patterson* is directly on point and requires dismissal here.  There the Fourth Circuit explained that the school official "who conducted the hearing" and "adjudicated the ensuing charges" was "the official who inflicted the alleged constitutional injury on the plaintiffs."  566 F.3d at 149.  The Fourth Circuit then affirmed the district court's dismissal of the § 1983 claim against other school officials because "in order to obtain relief on [their] claim, the plaintiffs should have named [the official who conducted the hearing and adjudicated the charges], and their failure to do so entitled the existing defendants to judgment as a matter of law."  *Id.*  Similarly, here "the proper party was not named as a defendant," because Professor Dimitriadis was not responsible for conducting the hearing or

adjudicating the charges for Ms. Amison and thus did not "inflict the alleged constitutional injury" on her. *Id.*

Ms. Amison has failed to allege any facts that Professor Dimitriadis "acted personally" to deprive her of a protected right (or anything) or that his "individual actions" violated the Constitution. *Williams*, 912 F.3d at 171. As such, she cannot state a claim under § 1983 against Professor Dimitriadis.

### B. The Complaint Does Not Allege a Deprivation of a Protected Property Interest or Liberty Interest.

Ms. Amison's failure to allege that Professor Dimitriadis personally took action that deprived her of anything and her failure to file within the statute of limitations are grounds alone to dismiss. However, Ms. Amison due process claim also fails because she has failed to allege a protected property or liberty interest.

### i. The Complaint Does Not Allege a Deprivation of a Protected Property Interest.

As an initial matter, Ms. Amison's Amended Complaint makes clear that she cannot allege a deprivation of a property right because she continued to be a student at George Mason University. *See* Am. Compl. ¶ 16.[7] Therefore, even if this Court were to find that Ms. Amison has a constitutionally protected property interest in her continued enrollment at Mason, her own complaint demonstrates that she was not deprived of that interest.

Ms. Amison also cannot claim a property right in her continued enrollment at Mason. "Property interest . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). "Neither the Supreme

---

[7] Indeed Ms. Amison graduated from Mason in December 2022.

Court nor the Fourth Circuit has held that such a property interest exists in connection with higher education, either categorically or specifically with regard to Virginia law." *See Doe v. Rector & Visitors of George Mason Univ.,* 132 F. Supp. 3d 712, 720-21 (E.D. Va. 2015).  In *Nofsinger v. Va. Commonwealth Univ.*, 523 Fed. Appx. 204, 205 (4th Cir. 2013), the Fourth Circuit affirmed the district court's holding that the plaintiff had "failed to allege a property interest in her continued enrollment in VCU's graduate program."  *See also Nofsinger v. Va. Commonwealth Univ.*, 3:12-CV-236, 2012 U.S. Dist. LEXIS 97857, at *19 (E.D. Va. July 13, 2012).  And "[t]he Eastern District of Virginia *has* conclusively ruled on this issue . . . finding that a property interest does not exist in continued education."  *Abbas v. Woleben*, 3:13CV147, 2013 U.S. Dist. LEXIS 134446, at *20 (Sept. 19, 2013); *see also Doe*, 132 F. Supp. 3d at 721; *Davis v. George Mason Univ.*, 395 F. Supp. 2d 331, 335-36 (E.D. Va. 2005) (plaintiff "has no property interest in continued enrollment in GMU"); *Sheppard v. Visitors of Va. State Univ.* 3:18-CV-723, 2019 U.S. Dist. LEXIS 70661, at *22 (E.D. Va. Apr. 25, 2019) ("Plaintiff has not identified an independent source of law creating an entitlement to continue his higher education."); *M.B. v. McGee,* 3:16cv334, 2017 U.S. Dist. LEXIS 44796, at *27 (E.D. Va. Mar. 24, 2017) ("[C]ourts consistently decline to find a property interest in *continued enrollment* in college or graduate school programs when a student involuntarily separates from an academic institution.").  As such, Ms. Amison cannot state a due process claim based on a deprivation of a property interest.

### ii.  The Complaint Does Not Allege a Deprivation of a Protected Liberty Interest.

While the Fourth Circuit has not resolved the question of whether a university student can state a liberty interest claim related to a disciplinary proceeding, some district courts in Virginia have held that they cannot.  In *Doe v. Alger*, 175 F. Sup. 3d 646, 660 (W.D. Va. 2016), the court

held that a student could not state a liberty interest claim under the "stigma-plus" test because "there is no statutory right to be a public college or university student."  If this Court follows the reasoning in *Alger* that alone would foreclose Ms. Amison's liberty interest claim.

Even if the Court were to follow the cases that have considered liberty interest claims in the university student context, Ms. Amison's claim would still fail.  "[T]o state a procedural due process liberty interest claim, a plaintiff claiming due process protection must assert a state actor has injured his reputation or otherwise imposed a reputational 'stigma' on him and must also have been deprived of 'some more tangible interests.'"  *Doe*, 132 F. Supp. 3d at 722.  In *Doe*, the court borrowed from the employment context to hold that in order for a student involved in a disciplinary proceeding to state a liberty interest claim "a plaintiff must allege (i) a stigmatizing statement, (ii) made public by the public university, (iii) in conjunction with [her] expulsion from the university, and (iv) that the charge was false."  *Id.* at 723.

As an initial matter, Ms. Amison cannot plead a liberty interest claim under the *Doe* test because she has not been expelled from the University.  *See* Am. Compl. ¶ 16 (alleging that Ms. Amison is currently a student at Mason).  Additionally, she has not alleged that Professor Dimitriadis made a stigmatizing statement about her that has been made public, which would require her to allege "a likelihood that prospective employers or members of the public would see the damaging information."  *Doe*, 132 F. Supp. 3d at 722; *see Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007) (holding that in order to state a liberty interest claim a plaintiff must show "a likelihood that prospective employers (i.e. employers to whom he will apply) or the public at large will inspect his personnel file").  Here, all Ms. Amison alleges is that Professor Dimitriadis emailed ***her*** accusing her of cheating and that he testified at her internal university Honor Committee hearing.  *See* Am. Compl. ¶¶ 22, 34-36.  "[S]tatements and

comments made only in internal memoranda, during private conversations, and at meetings not attended by the general public" are insufficient to demonstrate public disclosure. *Willis v. City of Va. Beach*, 90 F. Supp. 3d 597, 617 (E.D. Va. 2015)).  There are no allegations in the Amended Complaint that Professor Dimtriadis (or anyone else at the University) has publicized stigmatizing statements about Ms. Amison or that any of her prospective employers will be informed about her honor code violation.  *See Sheppard*, 2019 U.S. Dist. LEXIS 70661, at *20 (dismissing liberty interest claim where plaintiff "has not alleged that his suspension was in any way publicized or noted on his student records").  Nor could Ms. Amison make such allegations since the Family Educations Rights Protection Act ("FERPA") precludes the University or University officials from sharing information from Ms. Amison's student records without her permission.

### C.  Ms. Amison Was Provided Constitutionally Adequate Procedures.

Even assuming, *arguendo*, that Ms. Amison had alleged that Professor Dimitriadis personally deprived her of a constitutionally protected property or liberty interest, her claim would still fail because the Amended Complaint establishes that Ms. Amison was provided with the required due process.  In *Goss v. Lopez*, the Supreme Court explained that due process requires that high school students[8] facing suspensions must be provided with "oral or written notice of the charges against [them] . . . an explanation of the evidence the authorities have and an opportunity to present [their] side of the story."  419 U.S. 565, 581 (1975).  And in *Henson v. Honor Commit. of U. Va.*, 719 F.2d 69, 74 (4th Cir. 1983), the Fourth Circuit held that a student involved in an honor committee proceeding received "constitutionally sufficient" process when

---

[8] The Court found that the students had a property interest in their continued K-12 education because of a state-law based right to K-12 education.  No such law exists in Virginia in the context of higher education.

he received "adequate notice of the charges against him and the opportunity to be heard by disinterested parties." *See also Carboni v. Meldrum*, 949 F.Supp. 427, 437 (W.D. Va. 1996) (student had no due process claim arising from honor committee proceeding where she was given "notice of the charges against her and a reasonable opportunity to present her side of the story to a neutral decisionmaker"). To the extent that Ms. Amison was required to receive notice and an opportunity to respond, the Amended Complaint alleges that she received this due process.

According to the Amended Complaint, Ms. Amison was provided with notice of the charges and evidence against her, *see* Am. Compl. ¶¶ 22-24; Ex. 1 (email sent to Ms. Amison explaining that she was being referred to the Honor Committee because the faculty "carefully analyz[ed] students' submissions" and they "found similarities between [her] homework (and/or final exam) and at least one other student's work and/or materials found online"). This notice clearly meets the requirements of due process, which the Fourth Circuit has explained "does not mandate that all evidence on a charge or even the documentary evidence be provided, only that such descriptive explanation be afforded as to permit [the accused] to identify the conduct giving rise to the dismissal and thereby to enable [her] to make a response." *Linton v. Frederick Cty. Bd. of Cty. Comm'rs*, 964 F.2d 1436, 1440 (4th Cir. 1992). Moreover, per the Honor Code procedures, Ms. Amison could "access all information in [her case] by submitting a request" to the Office of Academic Integrity. Ex. 2 at 4.

She was also provided a hearing where the evidence against her was again presented to her and she had the opportunity to present her side of the story to the Honor Committee,

including calling her own "expert" witness.  *See* Am. Compl. ¶¶ 30, 34-35, 40.[9]  Her own

complaint, therefore, demonstrates that she was provided with the required due process and,

therefore, cannot state a claim under § 1983 for a violation of the due process clause.[10]  *See*

*Butler v. Bd. of Visitors of the Coll. of William & Mary*, 121 F. App'x. 515, 520 (4th Cir. 2005)

(student received due process when she was "given notice and an opportunity to respond to all

charges against her"); *Henson*, 719 F.2d at 74.

### D. Count III Must Also Be Dismissed Because Plaintiff Has Failed to Allege a Civil Conspiracy Under 42 U.S.C. § 1983.

Count III of the Amended Complaint alleges a claim for civil conspiracy against

Professor Dimitriadis under 42 U.S.C. § 1983.  In order to state a claim for civil conspiracy

under § 1983, a plaintiff must allege "that the defendants acted jointly in concert and that some

overt act was done in furtherance of the conspiracy which resulted in the deprivation of a

constitutional right."  *Massey v. Ojaniit*, 759 F.3d 343, 357-58 (4th Cir. 2014).  As the Amended

Complaint fails to allege the deprivation of a constitutional right, *see* Part II.A-C, the civil

conspiracy claim must fail too.  *Id*. ("Because Massey has not stated a claim for deprivation of a

constitutional right, his Count III conspiracy claim was properly dismissed."); *Glassman v.*

*Arlington County*, 628 F.3d 140, 150 (4th Cir. 2010) (same); *Shooting Point v. Cummings*, 243 F.

---

[9] Ms. Amison complains that she was precluded from "meaningful" cross examination.  Am. Compl. ¶ 80(c).  But it is "well settled that the accused is not entitled to 'trial-like' rights of confrontation or cross-examination at disciplinary proceedings." *Doe v. Loh*, PX-16-3314, 2018 U.S. Dist. LEXIS 53619, at *22 (D. Md. March 29, 2018) (collecting cases) *aff'm* 767 Fed. Appx. 489 (4th Cir. 2019); *see also Butler*, 121 Fed. Appx. at 520 ("[W]e find no basis in the law" for importing a requirement of "cross-examin[ing] witnesses" "into the academic context.").

[10] Additionally, per Mason's Honor Code procedures, Ms. Amison was also provided the opportunity to appeal the Honor Committee decision.  *See* Ex. 2.

Supp. 2d 536, 537 (E.D. Va. 2003) ("[T]he gist of the cause of action is the deprivation and not the conspiracy.").

Even if the Court were to find that there was a deprivation of a constitutional right, Count III would still need to be dismissed because Ms. Amison has failed to "plead facts that would reasonably lead to the inference that [Defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Rutternberg v. Jones*, 283 Fed. Appx. 121, 132 (4th Cir. 2008). "Litigants have a weighty burden to establish a civil rights conspiracy" and "[i]f the existence of a conspiracy can be found only through speculation and inference the claim will be dismissed." *Cooper v. Lippa*, 3:11-CV-712, 2012 U.S. Dist. LEXIS 56822, at *18-19 (E.D. Va. Apr. 23, 2012). In *Ruttenberg*, the Fourth Circuit affirmed the dismissal of a 1983 civil conspiracy claim where "[n]o common purpose [was] alleged and nothing beyond conclusory allegations of conspiracy [were] made." 283 Fed. Appx. at 132; *see also Uhuru Baraka Rowe v. Holloway*, 3:19CV418, 2021 U.S. Dist. LEXIS 92615, at *35-37 (E.D. Va. May 14, 2021) (dismissing conspiracy claim where plaintiff "fails to allege facts that suggest that Defendants all agreed to retaliate"). Likewise, here, the Amended Complaint contains no factual allegations that Professor Dimitriadis and others discussed Ms. Amison's case, let alone came to a mutual understanding or agreement to try to accomplish an unlawful plan.

Finally, Count III must be dismissed under the "intracorporate conspiracy doctrine," which provides that "if all defendants are members of the same collective entity, there are not two separate people to form a conspiracy." *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019). In *Buschi v. Kirven*, 775 F.2d 1240, 1251-53 (4th Cir. 1985), the Fourth Circuit explained that this doctrine "has been applied in the civil rights area," has been "recognized and

adopted by us," and was 'warrant for the dismissal of the identified defendants." *See also Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 352-53 (4th Cir. 2013) (applying doctrine to § 1985(3) claim).[11]   Following *Buschi*, district courts in the Fourth Circuit have also applied the doctrine to bar § 1983 conspiracy claims.  *See Cosby v. Town of Farmville*, 3:20cv494, 2021 U.S. Dist. LEXIS 152717, at *16-17 (E.D. Va. Aug. 12, 2021) (stating that "Fourth Circuit has applied [intracorporate conspiracy] doctrine to claims of conspiracy brought pursuant to 42 U.S.C. § 1983" and dismissing claim because "all the alleged conspirators are said to be members of the Farmville Police Department"); *Dowdy v. Pamunkey Reg'l Jail Auth.*, 3:14-cv-003, 2014 U.S. Dist. LEXIS 67127, at *28-9  (E.D. Va. May 15, 2014) (dismissing § 1983 claim under intracorporate conspiracy doctrine); *Smith v. Dance*, 4:21-CV-103, 2022 U.S. Dist. LEXIS 116423, at * (E.D.N.C. Jul. 1, 2022) ("the intracorporate conspiracy doctrine is equally applicable to governmental entities"); *Roberts v. Ballard*, 2:15-cv-15458, 2017 U.S. Dist. LEXIS 31358, at *13-23 (S.D.W.V. Mar. 7, 2017) ("[C]ourt's have consistently applied the intracorporate conspiracy doctrine to officers and agents of public entities.").[12]   The only defendants, in this case, are Mason and individuals who Ms. Amison alleges "were employees of George Mason University at all times relevant to this action," Am. Compl. ¶ 14, therefore, under the intracorporate conspiracy doctrine, Count III must be dismissed.

---

[11] The Fourth Circuit affirmed in *Locus v. Fayetteville State Univ.*, No. 88-2561, 189 U.S. App. LEXIS 22005, at *5 (4th Cir. Mar. 8, 1989), that in *Buschi*, "we found the doctrine applied in the civil rights context."

[12] Both the Sixth and Eleventh Circuit apply the intracorporate conspiracy doctrine to § 1983 claims.  *See Jackson*, 925 F.3d at 817; *see also Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2010); *Bell v. Triplett*, G-02-139, 2003 U.S. Dist. LEXIS 28972, at * (S.D. Tex. May 30, 2003) ("It is well settled that a § 1983 conspiracy cannot consist entirely of employees of the same state agency because there is no 'intracorporate conspiracy under federal law.")

### E.  Prof. Dimitriadis Is Entitled to Qualified Immunity from Claims Against Him in His Individual Capacity.

Even if the Court were to find that Ms. Amison has stated a claim against Prof. Dimitriadis under § 1983, the § 1983 claims against him in his individual capacity would still need to be dismissed because he is entitled to qualified immunity.  Qualified immunity "shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person."  *Meyers v. Balt. Cnty.*, 713 F.3d 723, 731 (4th Cir. 2013).  "When properly applied it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011); *see also Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015) ("[W]e have emphasized repeatedly, 'officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'").  Courts employ a two-step process for deciding whether qualified immunity applies.  First the court asks "whether a constitutional violation occurred."  *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017).  As demonstrated above, Plaintiff has not properly pled a violation of the due process clause by Professor Dimitriadis.  That should be the end of the matter.  However, if the Court finds that Plaintiff has alleged a constitutional violation, it must proceed to the second step and decide "whether the right violated was clearly established at the time of the official's conduct."  *Id.*  Assuming, *arguendo*, that the Court does engage in the second step analysis, Plaintiff cannot demonstrate that the right was clearly established.

For a right to be clearly established "[t]he unlawfulness of the official's conduct must be apparent in light of pre-existing law."  *Id.* (internal quotation marks omitted).  "In conducting the clearly established analysis, [a court] first examine[s] cases of controlling authority in this jurisdiction—that is decisions of the Supreme Court, [the applicable] court of appeals, and the

highest court of the state in which the case arose." *Id.* (internal citations omitted). "Ordinarily" courts "need not look any further," but courts may look to "a consensus of cases of persuasive authority from other jurisdictions, if such exists." *Id.* at 539 (emphasis omitted).

Another key aspect of the qualified immunity analysis is to "define the right at the appropriate level of specificity." *Id.* The Supreme Court has warned against "defin[ing] clearly established law at a high level of generality" and explained that "general propositions, for example that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Ashcroft*, 563 U.S. at 742; *see also Campbell v. Galloway*, 483 F.3d 258, 271 (4th Cir. 2007) (right must be defined at a "high level of particularity").

The Fourth Circuit's recent holding in *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 238-40 (4th Cir. 2021) is dispositive here. In *Sheppard*, the Fourth Circuit held that a § 1983 due process claim brought by a university student regarding a disciplinary proceeding could be "quickly disposed of on the basis of qualified immunity." *Id.* The Fourth Circuit then held explicitly that there is "***no clearly established right to continued enrollment in higher education***" and as a result a university administrator was entitled to qualified immunity for a § 1983 due process claim related to a university disciplinary proceeding. *Id.* (emphasis added); *see also Doe*, 132 F. Supp. 3d at 727 (university officials entitled to qualified immunity from due process claim related to disciplinary matter). Likewise, Professor Dimitriadis is entitled to qualified immunity here for Ms. Amison's § 1983 due process claim related to her university disciplinary proceeding.

Additionally, the only conduct Professor Dimitriadis is alleged to have engaged in is accusing Ms. Amison of cheating and testifying at her honor committee hearing. Therefore,

even if *Sheppard* did not require qualified immunity, Ms. Amison would still have to identify clearly established law specific to "the circumstances at hand;" i.e. establishing that a professor violates a student's due process rights by accusing them of cheating and testifying at their disciplinary hearing. *Campbell*, 483 F.3d at 271 (defining right as "whether a reasonable officer would have known that [plaintiff]'s rambling thirteen-page memo . . . touched on a matter of public concern"); *see also Doe v. Russell Cty. Sch. Bd.*, 292 F. Supp. 3d 690, 713 (W.D. Va. 2018) (granting qualified immunity where "plaintiff has not pointed the court to any controlling authority sufficiently similar to the situation confronted by" the defendants). Unless Ms. Amison can identify such controlling authority from the Fourth Circuit or Supreme Court, Professor Dimitriadis is entitled to qualified immunity. Likewise, unless Ms. Amison can identify controlling law that an employee can conspire with other employees of the same organization, her § 1983 conspiracy claim is also barred by qualified immunity.

## III.  COUNT I AND III MUST BE DISMISSED AS TO PROFESSOR DIMITRIADIS IN HIS OFFICIAL CAPACITY.

Ms. Amison's claims against Professor Dimitriadis in his official capacity must be dismissed because she fails to state a claim under § 1983 for a deprivation of due process or civil conspiracy. *See* Part II. Additionally, any official capacity claim must be dismissed under Rule 12(b)(1) because the Court lacks subject matter jurisdiction over the claims because of Eleventh Amendment immunity and lack of standing. *See Kitchen v. Upshaw*, 286 F.3d 179, 183-84 (4th Cir. 2002) ("The Eleventh Amendment limits the Article III jurisdiction of federal courts to hear cases against States and state officers acting in their official capacity."); *Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 230 (4th Cir. 2008) ("standing implicates this court's subject matter jurisdiction").

## A. Eleventh Amendment Immunity Precludes Monetary Claims Against Professor Dimitriadis in His Official Capacity.

"A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and is therefore "no different from a suit against the State itself." *Fauconier v. Clarke*, 966 F.3d 265, 279 (4th Cir. 2020). "[I]t is well settled that the Eleventh Amendment bars a suit by private parties to recover money damages from the state or its alter egos acting in the official capacities." *Huang v. Board of Gov. of the Univ. of N.C.*, 902 F.2d 1134, 1138 (4th Cir. 1990). "This bar remains in effect when state officials are sued for damages in their official capacity." *Ky. v. Graham*, 473 U.S. 159, 169 (1985). Additionally, the Supreme Court has explicitly stated that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983" and therefore cannot be subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Professor Dimitriadis is an employee of Mason, *see* Am. Compl. ¶ 9, and Mason is a "state-supported university that is entitled to the same sovereign immunity as the Commonwealth of Virginia," *Adkins v. Rector & Visitors of George Mason Univ.*, 15cv879, 2015 U.S. Dist. LEXIS 128150, at *3 (E.D. Va. Sept. 23, 2015). As such, monetary claims against Professor Dimitriadis in his official capacity must be dismissed because they are barred by the Eleventh Amendment.

## B. The Eleventh Amendment Also Precludes Claims for Injunctive Relief Against Professor Dimitriadis in His Official Capacity.

The Eleventh Amendment also bars claims for injunctive relief against state officials sued in their official capacity. *See Jemsek v. Rhyne*, 662 F. App'x. 206, 210 (4th Cir. 2016) ("Eleventh Amendment immunity extends to state officers sued in their official capacities. This jurisdictional bar applies regardless of the nature of the relief sought.") (quoting *Pennhurst State Sch & Hosp. v. Halderman*, 465 U.S. 89, 100-102 (1984). While there is an exception to this

immunity under the *Ex parte Young* doctrine, that exception only allows federal courts to "exercise jurisdiction over claims against state officials by persons at risk of or suffering from violations by those officials of federally protected rights, if (1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective." *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998). "The exception is narrow:  It applies only to prospective relief [and] does not permit judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct*, 506 U.S. at 146.  If the *Ex parte Young* exception does not apply, then Eleventh Amendment immunity bars the claim for injunctive relief.

Ms. Amison fails both requirements of the *Ex parte Young* doctrine because she does not allege an ongoing or "future violation of federal law," nor does she seek "relief properly characterized as prospective." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011).  First, Ms. Amison has not alleged an ongoing violation.  The injunctive relief sought as to Ms. Amison is "enjoining preliminary and permanently, investigation and hearing of Plaintiff."  But the Complaint does not allege that there is currently an ongoing investigation or hearing as to Ms. Amison, nor could it because her academic integrity matter concluded ***in 2020***.[13]  The prospective injunction exception "does not apply when the alleged violation of federal law occurred entirely in the past." *DeBauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1999); *see also Jemsek v. Rhyne*, 662 Fed. Appx. 206, 212 (4th Cir. 2016) (prospective injunction exception did not apply where "disciplinary actions were one-time events, and the alleged due process violations occurred entirely in the past"); *Stover v. Coll. of William & Mary in Va.*, 4:21cv150, 2022 U.S. Dist. LEXIS 190466, at *17 (E.D. Va. Oct. 18 2022); *Figuereo-Mejia v.*

---

[13] Additionally, as noted above, Ms. Amison graduated from Mason in December 2022.

*Lokey*, No. 7:18-cv-286, 2019 U.S. Dist. LEXIS 168590, at *11 (W.D. Va. Sept. 30, 2019) (exception did not apply where the "alleged misconduct occurred entirely in the past and ended nearly two years before [plaintiff] filed this lawsuit").

Second, the exception is inapplicable here because Ms. Amison is not seeking "prospective relief."   Ms. Amison is seeking redress for alleged past constitutional violations that occurred when her academic integrity matter was adjudicated and decided *in 2020*.  *See* Am. Compl. ¶¶ 22, 30, 43.  Indeed the injunctive relief sought, "declaring that Defendants' actions unlawful" and that the "investigation and hearing *was* conducted in an unprofessional and prejudicial nature, it *was* tainted, and that evidence obtained through Moss software be excluded," Compl. pg. 19-20 (emphasis added), is exactly the type of injunction declaring state officials "violated federal law in the past" that is not allowed under the *Ex parte Young* doctrine, *P.R. Aqueduct*, 506 U.S. at 146.  Therefore, Ms. Amison is seeking a retroactive injunction making the *Ex parte Young* exception to Eleventh Amendment immunity inapplicable.

Additionally, Ms. Amison cannot rely on the *Ex parte Young* doctrine because her complaint does not allege a violation of "federal law." *Jemsek*, 662 Fed. Appx. at 211.  As explained above, *see* Part II.C & D, Ms. Amison's complaint fails to allege a violation of the due process clause because she has not been deprived of a constitutionally protected right and, even if she were, she was provided the required due process.  *See Booth v. Maryland*, 112 F.3d 139, 143 (4th Cir. 1997) (*Ex parte Young* argument "founders on a basic point" where "plaintiff can demonstrate no violation of federal law at all").  Indeed, the injunction sought by Ms. Amison again demonstrates that her claim cannot proceed:  she is seeking an injunction "because the investigation and hearing was conducted in an unprofessional and prejudicial manner, it was tainted, and that evidence obtained through MOSS software be excluded."  It is a not a violation

of federal or constitutional law for a hearing to be conducted in an unprofessional or prejudicial manner nor to use evidence obtained through the MOSS software.  As the Supreme Court explained in *Wood v. Strickland*, 420 U.S. 308, 326 (1975), "§ 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations."  Ms. Amison may have disagreements with how her hearing was handled and the probative value of the evidence used against her, but such beliefs are not sufficient to state a claim for a violation of federal law.

Finally, even if Ms. Amison could overcome all of the above issues, she still could not pursue an *Ex parte Young* claim against Professor Dimitriadis, specifically, because, as explained above, *see* Part II(A), there is no allegation that he personally took an action that deprived Ms. Amison of anything, let alone a constitutionally protected right without due process.  All that Professor Dimitriadis is alleged to have done is (1) refer Ms. Amison for an alleged honor code violation and (2) testified as a witness at the hearing.  *See* Am. Compl. ¶¶ 22, 34-36.  As the Supreme Court explained in *Ex parte Young* itself, "[i]n making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional ***it is plain that such officer must have some connection with the enforcement of the act***, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party."  209 U.S. 123, 157 (emphasis added).  And in *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001), the Fourth Circuit held that there must be a "'special relation'" between the state officer sued and the challenged statute to avoid the Eleventh Amendment bar," and that when the "state official [is] not directly involved in enforcing the subject statute" *Ex parte Young* does not apply.  This is because, as the Fourth Circuit has explained, the "*Ex parte Young* exception is directed at officers of the state who are clothed with

some duty in regard to the enforcement of the laws of the state, *and* who threaten and are about to commence proceedings to enforce against parties affected by an unconstitutional act." *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010). The state officer must therefore have both "proximity to and responsibility for the challenged state action." *Id.* (emphasis removed); *see also Lighthouse Fellowship Church v. Northam*, 462 F. Supp. 3d 635, 642-44 (E.D. Va. 2020) (holding that the plaintiff could not proceed with their *Ex parte Young* claim against governor because he was "not directly involved in enforcing the subject statute"); *Individuals v. Bd. of Governors of the Univ. of N.C.*, 20CV1072, 2022 U.S. Dist. LEXIS 60315, at *13-14 (M.D.N.C. Mar. 31, 2022) (*Ex parte Young* was inapplicable because lack of special relationship between college administrators and challenged action). Professor Dimitriadis did not cause the alleged deprivation of a constitutionally protected right, and therefore is not the proper defendant for an *Ex parte Young* claim.

Professor Dimitriadis is also not the proper defendant because there is no allegation that he has the ability to provide the relief sought by Ms. Amison. Again, Professor Dimitriadis is just a faculty member who referred Ms. Amison for alleged cheating and testified at her academic hearing. Professor Dimitriadis does not control the academic integrity process at Mason and as such could not provide the injunctive relief sought here. *See McBurney*, 616 F.3d at 399 (requirement of a special relationship between defendant and statute ensures that "any federal injunction will be effective with respect to the underlying claim"); *Al-Habashy v. Va. Dep't of Juvenile Justice*, 7:13CV459, 2014 U.S. Dist. LEXIS 134848, at *28-29 (W.D. Va. Sept. 24, 2014) ("[T]he *Ex parte Young* exception only authorizes suits against state officials who have the power to provide the injunctive relief requested by the plaintiff."); *Aikens v. Ingram*, 71 F. Supp. 3d 562, 571 (E.D.N.C. 2014) (*Ex parte Young* did not apply where the

"individual defendants named herein also lack the authority to restore plaintiff's benefits."). As the court explained in *Lighthouse Fellowship*, the plaintiff has an "obligation to name the proper state official(s) as the proper defendant(s) in such suits seeking prospective relief." 462 F. Supp. 3d at 644. Professor Dimitriadis is not the proper state official because he was not responsible for the due process violations and does not have the ability to provide the injunctive relief sought.

### C.  Plaintiff Lacks Standing to Bring an *Ex Parte Young* Claim Against Professor Dimitriadis in His Official Capacity.

Even assuming, *arguendo*, that *Ex parte Young* applied here, this Court would not have subject matter jurisdiction over a claim by Ms. Amison for prospective injunctive relief because she lacks standing to seek such relief. The Supreme Court held in *Lyons*, 461 U.S. at 111, that the "equitable remedy [of an injunction] is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." The Court further explained that "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." *Id.* at 103. Following the Court's holding in *Lyons*, the Fourth Circuit has recognized that "[t]he law is well settled that federal injunctive relief is an extreme remedy" and that "a future or conjectural threat of injury is insufficient to justify injunctive relief" under § 1983. *Simmons v. Poe*, 47 F.3d 1370, 1382 (4th Cir. 1995); *see also Raub v. Campbell*, 785 F.3d 876, 885-86 (4th Cir. 2015).

Here, Ms. Amison has only alleged a "past wrong," i.e., the alleged denial of due process in her academic integrity hearing in 2020 for alleged cheating in CS112. Am. Compl. ¶¶ 30-42, 80. She has not alleged that she plans to take CS112 (or any other class at Mason) again, let alone that she will be accused of cheating again (especially since she graduated in December

2022).  She, therefore cannot show "any real or immediate threat that [she] will be wronged again." *Lyons*, 461 U.S. at 111.  To the contrary, any potential future harm would be "merely speculative," which is insufficient to "make out [the] prerequisite for equitable relief." *Raub*, 785 F.3d at 886; *see also Stover*, 2022 U.S. Dist. LEXIS 190466, at *14-15 ("Without a sufficient likelihood that Plaintiff will be wronged again in a similar way, Plaintiff's allegations of future harm are neither imminent nor concrete and she does not have standing to seek injunctive relief under  . . . § 1983."); *Doe v. Rector & Visitors of the Univ. of Va.*, 3:19-cv-00070, 2020 U.S. Dist. LEXIS 157001, at *9 (W.D. Va. Aug. 28, 2020) (plaintiff "'must allege an injury that is concrete, particularized, and immediately threatening' in order to establish that she has met the minimum constitutional requirement for Article III standing " and "the injury must be 'certainly impending to serve as the basis for standing in a suit for injunctive relief'") (quoting *Griffin v. Dep't of Labor Fed Credit Union*, 912 F.3d 649, 653 (4th Cir. 2019)).

Ms. Amison also lacks standing to bring her injunctive claim because she cannot satisfy the traceability or redressability prong of Article III standing.  To have Article III standing, a plaintiff "must be able to show that (1) she suffered an actual or threatened injury that is concrete, particularized, and not conjectural; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable decision." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 753 (4th Cir. 2013).  "The traceability and redressability prongs become problematic when third persons not party to the litigation must act in order for an injury to arise or be cured" *Id.* at 755.  "An injury sufficient to meet the causation and redressability elements of the standing inquiry must result from the actions of the respondent, not from the actions of a third party beyond the Court's control." *Mirant Potomac River, LLC v. EPA*, 577 F.3d 223, 226 (4th Cir. 2009).

As discussed above, *see* Part II.A, in *Patterson*, 566 F.3d at 149, the Fourth Circuit affirmed the district court's dismissal of a claim challenging the outcome of a disciplinary hearing because the plaintiff had failed to sue "the University official who conducted the hearing . . . and who also administratively adjudicated the ensuing charges" and thus had not sued "the official who inflicted the alleged constitutional injury on the plaintiffs."  Similarly, here "the proper party was not named as a defendant."  *Id.*  As discussed above, Ms. Amison's alleged injury, deprivation of a constitutionally protected right, cannot be traced to Professor Dimitriadis because there is no allegation that he has deprived her of anything.  Professor Dimitriadis referred her for an academic integrity violation and testified at her hearing—that's it.  Other individuals decided that Ms. Amison violated the honor code and to impose sanctions on her as a result of such violations.  *See Sierra Club v. United States Def. Energy Support Ctr.*, 1:11-cv-41, 2011 U.S. Dist. LEXIS 84852, at * (E.D. Va. Jul. 29, 2011) (traceability requirement not met where plaintiff's "alleged injuries are the results of the independent actions of . . . of third parties not before the court");  *Lowe v. Brink*, 3:22-cv-263, 2022 U.S. Dist. LEXIS 128302, at *7 (E.D. Va. Jul. 19, 2022) (plaintiff could not "satisfy causality requirement because the Committee Chairman rather than the Board caused her injury").

Ms. Amison also cannot meet the redressability requirement for standing because an injunction against Professor Dimitriadis will not redress the alleged harm she claims.  Once again, Professor Dimitriadis has no authority over academic integrity matters at Mason.  Therefore, even if the Court were to grant the injunction sought by Ms. Amison against Professor Dimitriadis, it would have no effect. *See Disability Rights S.C. v. McMasters*, 24 F.4th 893, 903 (4th Cir. 2022) (no redressability because defendant "has no responsibility for enforcing the Proviso" so injunction enjoining enforcement "would have no effect on his conduct"); *Jemesk v.*

*N.C. Med. Bd.*, 5:16-CV-59, 2017 U.S. Dist. LEXIS 23570, at *32-33 (E.D.N.C. Feb. 21, 2017) *aff'm.* 697 Fed. Appx. 234 (4th Cir. 2017) (no redressability where the relief sought could not be executed by individuals sued).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the claims against Professor Dimitriadis in the Amended Complaint.

January 13, 2023                            RESPECTFULLY SUBMITTED,

                                          _____/s/_____

                                          Eli S. Schlam, Asst. Atty. Gen.
                                          Virginia Bar Number 92987
                                          George Mason University
                                          4400 University Drive,
                                          MS 2A3
                                          Fairfax, VA 22030
                                          Phone: (703) 993-2619
                                          Fax: (703) 993-2340
                                          eschlam@gmu.edu

                                          *Attorney for Socrates Dimitriadis*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 13th day of January, 2023, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to counsel of record in this case.

_____/s/_____

Eli S. Schlam, Asst. Atty. Gen.
Virginia Bar Number 92987
George Mason University
4400 University Drive,
MS 2A3
Fairfax, VA 22030
Phone: (703) 993-2619
Fax: (703) 993-2340
eschlam@gmu.edu

28